Welcome. We have five cases on our docket this morning, all set for oral argument. We'll take a break, I'm sure, at one point, probably after the second or third case. We'll see how things go. Council ready? Yes, Your Honor. May it please the court, counsel. Good morning, I'm Darrell Kilmer, and along with my co-counsel, Maureen Newman, we're of the law firm of Kilmer, Lane & Newman in Denver. We represent Ms. Salemi, who is also present in court with us today. As I'm sure my friends and family would confirm, I have a lot of issues. The briefs themselves indicate that there were multiple claims for relief. Almost every single one of them were summarily judged by the district court, and we found a lot of problems with those. There's reversible error in many. I've got roughly 12 minutes to deal with all of my issues, which feels a bit unfair, but I'm going to try to reserve three minutes for rebuttal. So I've narrowed down the focus of this oral argument to three major issues that I think are grounds for reversal. The first one is the Title VII discrimination case. I think what happened here was the proverbial throwing the baby out with the bathwater by the district court. It was a broad-ranging claim that Ms. Salemi had been discriminated against while working at PARA on the basis of her gender and on the basis of her national origin and that there was retaliation. Initially, to the district court's concern, the time frames were too broad, so the district court properly set out to narrow the scope of the charge to figure out which claims he had jurisdiction over. Your point is that there was a promotion denied in 2011, correct? For sure. At least. Did you argue that in the district court? Yes, of course. You did? Yes, we argued that... Tell me where, because I couldn't find it. Well, it's in the EEOC charge, for one thing. No, I'm talking about the district court. Well, the EEOC charge was attached to the complaint in the first place. Did you argue it, rather than just having it contained in an attachment? Yes, Your Honor. It was, for example, part of the memorandum that Ms. Salemi submitted in June of 2011, where she talked about her persistent efforts and failures to obtain a promotion. This is in the summary judgment proceedings? Yes, in the summary judgment. In your brief, you argue that? In the brief and, obviously, in the attachments as well, yes. Okay. But in the promotion, the district court did, in fact, evaluate a little bit. But what the district court skipped, and this is the most immediate road to reversal, is the status of discrimination that Ms. Salemi was working under at all times during her employment, and including the 300 days indisputably covered by the EEOC charge. This is sort of a good old-fashioned discrimination case where women are simply paid less than men, and Ms. Salemi was paid less, $60,000 to $120,000 less, than similarly situated men at all times. Now, that status of discrimination, working, doing similarly situated work, doing the same type of work, and being paid $60,000 to $120,000 less. As I understand your argument there, you're comparing her to people who were portfolio managers, even though she was not. They were given the title of portfolio manager. Well, you argue in, I mean, one of your complaints is that she was given more menial work, and she wasn't doing the same work as a portfolio manager. So it seems to me you can't have it both ways. You can't say she wasn't doing the same work as they were doing, and, oh, by the way, even though she didn't have that title, she should be paid the same. Well, yes, in fact, she was given the menial work, but she was still expected to do the work that the rest of the team were doing. What happened is they worked in a team. So it might be like the five of us, my partner and the three of you and me were on a team, and they all do the same type of work. They'll go to a meeting. They all have to do analysis and so forth. But Ms. Salemi, in addition, was given what was this menial operational work, which was— But this was the one claim that actually went to the jury, the Equal Pay Act claim. Isn't that right? The Equal Pay Act claim did go to the jury. And the jury ruled against you, found against you on that. Well, the jury—that's true. But the Equal Pay Act claim is a very hard claim to prove. For example, the standard of causation is that you have to prove that gender is the sole reason for the adverse treatment. That's a—the reason we brought the Equal Pay Act claim was complementary to the Title VII discrimination claim. It's easier to prove a Title VII discrimination claim because the standard is that your gender is a motivating factor. And the Equal Pay Act, you can go one step further and prove that if it's the sole factor, then it's a violation of that statute as well. I've never seen in 31 years of practice a Title VII discrimination claim dismissed while an Equal Pay Act claim could go forward. In fact, it's logically hard to imagine how that could be because an unequal pay status is a Title VII violation. But that's exactly what happens here. The district court confused the analysis in this way. The district court, in citing Burlington v. Ellerth, which is a sexual harassment case decided by the Supreme Court, wrestling with the idea of what type of conduct is actionable sexual harassment, the district court insisted on finding that there was a significant change in employment status during this 300 days. And the district court said, I don't see a significant change in employment status during the time period covered by the charge. But if you are underpaid relative to a similarly situated male counterpart, and that's at least a debatable proposition. There was disputed issues of fact as to whether they're similarly situated. If you're underpaid during that 300 days and there's no change in your status, you still have an actionable Title VII discrimination case. In fact, this is the core evil that the 1964 Civil Rights Act was aimed at preventing, disparities in the terms and conditions of employment. You don't have to further prove that you've been demoted or fired, and you don't even have to prove that you didn't get promoted when you should have been during that period of time. Status discrimination is disparate treatment. Disparate treatment is what Title VII is designed to eradicate. Do you first have to show that she was qualified to be a portfolio manager before you can claim she should have been paid equally with the portfolio managers? Yes, Judge McHugh. But you have to show it within the context of the McDonnell-Douglas four-part test. And the courts have consistently held, including this court, that the qualifications step of the four-part test is a very low hurdle. And this wasn't really even debated that much as to whether she had the basic qualifications of it. Well, I guess I disagree with you. The district court found four of the specific functions of that job that it was undisputed that she was not qualified for. But the district court improperly front-loaded that into the four-step McDonnell-Douglas test. Properly, that should be analyzed at the pretext stage. You have to show you have the basic objective qualifications, which she did have the objective qualifications. Well, you know, you say objective, I say subjective. I mean, it's kind of interesting because some of the qualifications that you're arguing are objective don't really seem to be particularly different in nature than the ones that you're arguing are subject. I mean, it's subjective. It's kind of hard to tell the difference. Well, I disagree, and particularly in the context of this case. The only qualification that they said she lacked was that she was quiet in nature and not assertive enough. Now, whatever the line is between the objective and that, did she not? Excuse me? And she conceded that, did she not? Well, she said that her style is quiet. That's correct. She didn't say she's not qualified for the job. I mean, I said she needed to get more training, more experience to be able to do this position. No, she did not say that. That is wrong. What she said was she's willing to take classes when the human resources director said you should take classes. This is a male-dominated environment. Take classes. She says, I'm willing to do that. She took a class which taught female professionals how to do better in a male-dominated industry. These were intended to make her remedy the discriminatory environment, but she was willing to do that. It's not like she told them to take a hike. She said, I'll do whatever I have to do. But she admitted in her deposition that she needed more training before she could become a portfolio manager. Well, at some point, she did need more training. But it took her six years to get promoted from a portfolio associate to an analyst in the first place. She certainly didn't need that kind of time. And she was every bit as qualified as the men who themselves were promoted to portfolio manager and, more importantly, to senior portfolio manager. Now, there's no question, especially at the summary judgment stage, these were disputed issues of fact. Well, but not if she, in her own deposition, testifies that she agrees she wasn't yet qualified for this position. And her complaint is that I wasn't getting the same opportunities, but I admit I wasn't ready now. Well, I respectfully disagree that that is what she's confessing in her deposition. She brought the case because she knew she was every bit as qualified as these men. And every performance review she had was fully satisfactory. Now, everybody... Well, and that's another thing I'd like to discuss with you because we have case law that says just because you're doing the job that you have satisfactorily, an analyst position, doesn't say anything about whether you were qualified to do a different job that would be a promotion. So while I think it's great that she was getting four out of five on the ranking on the current job, I fail to see how that's particularly helpful to us in figuring out whether there's evidence that she was qualified to be a portfolio manager. Well, the error in that analysis, Your Honor, with respect, is that you're calling it a different job. And I think a description of the promotions here is really essential because, to me, it was unusual. This isn't an opening for a promotion where they say, we're going to have a new portfolio manager. Submit your application. We'll do an interview. There will be a competition. Rather, you've got the five of us in a room. Some of us are portfolio managers. Some of us are analysts. And Tim Moore, who's the director of the AI department, on his own, within his complete subjective boundaries at all, decides, Kilmer, it's time for you to be a portfolio manager. Judge McHugh, it's time for you to be a senior portfolio manager. I've just decided that you're up to it. It's not like you're just doing the same work, though. Doesn't the portfolio manager position require interpersonal skills? Isn't that the big difference? You're working with clients. No, no, no. In fact, Ellie Salemi was supposed to be working with clients as well. There was nothing in the job description that says you don't. She did, from time to time, not nearly as much as the men did, get assigned to go to a due diligence trip. That's what they called them. So you could go talk to executives. Well, didn't they all have equal opportunities to volunteer? Anybody could volunteer, I suppose, but you're not necessarily selected. But the testimony in Undisputed was that in seven years, she had volunteered once. No, I don't think that's Undisputed. She constantly went in to Mr. Moore and said, I want to do the portfolio with the men are doing. I want to have the same opportunity. I can't advance unless you give me these chances to travel. And instead, you've got me doing cash flow and data entry and things like that. She's got two degrees in mathematics and is every bit as qualified. And she was begging to get this opportunity. And her own testimony was that the way this happened was at these meetings, everyone had an equal opportunity to jump in and say, I'll do this particular assignment. What I say I will do and what Tim Moore assigns me to do are two different things. She was always willing to do it. I guess you could raise your hand and say, I'll do it. But he's going to send Chilton or Kasich or Norton. Isn't there a difference between raising your hand and having him assign someone else and not raising your hand at all? I suppose there could be. But there is this would at least be a disputed issue of fact as to whether he had no idea she wanted to do these things. He would he wouldn't have testified. He didn't testify to that, that she that he had no idea she wanted to do. Yes, I do. Thank you. Good morning. My name is Megan Martinez and I represent the three appellees in this case. The Colorado Public Employees Retirement Association, Tim Moore and Angela Sutter, who are present in the gallery. This case originated after Elham Salemi, a summer intern with no real outside work experience, was promoted several times at PERA, but then reached a point where she was not cut out to take it to the next level. In the subsequent job she claimed she wants, she was not qualified. What PERA saw was that she was chronically passive. Even after they provided her with multiple mentors, job opportunities, time to grow, she did not show that she was qualified to be promoted. That's the sort of thing that I would suspect is difficult to establish on summary judgment. Why do you think, even if you're confident you would have prevailed at a trial, why do you think there was no real material issue of fact, bona fide issue of fact here? Because based on what she alone said about her qualifications compared to what are the qualifications in the record for the job descriptions and the undisputed testimony of others who interacted with her, saw her in meetings, saw that she didn't even speak in some meetings, she was even nonverbal, and you compare that, it's undisputed. The only real disputes in the record are the subpart of Ms. Salemi's own testimony. You'll see, because there are Title VII and EPA claims, that she changes her story and her allegations to meet the claims. But in doing so, she creates a moving target, and she creates inconsistencies with her own testimony. Isn't – wasn't the district court incorrect to make the qualification decision during the prima facie case? Isn't her testimony alone that I was qualified enough to get her past the prima facie case? It is not, and then in a de novo review, we'd also submit that the nondiscriminatory reason was not shown to be pretext. But as far as the qualifications themselves, when you look in the record of 406 and 407 and look at what those are, those are objective qualifications. Those are things that include specific abilities that she needs to show that she has. And when you compare those to her own deposition testimony and her own answers to written discovery, you see that time and time again, she admits that she is not qualified, especially as of this 2011. And I would submit in response to your question on page 56 of the response, they may get a continuing failure to promote – not a succinct failure to promote claim. But she shows that she is not qualified, which is why when you look, for instance, in her growth, in her performance reviews, she's continually saying, I need more experience. I need things to develop in order to be put on the track to become portfolio manager. She is recognizing that she is not currently qualified to perform in the role of a portfolio manager. Well, I mean, you say these are objective criteria, and certainly a bachelor's degree in finance, economics, business, administration, or a related field, I'd say that's subjective. We can all look at it and see does she or doesn't she have it. But, you know, knowledge of financial and capital markets, concepts, principles, and theories. I mean, that's more subjective, isn't it? There is going to be subjectivity in any job description, of course. A law clerk has to have strong oral and written communications, which somebody could say is maybe somewhat subjective, maybe somewhat objective. But when you look at what in 406 and 407, the actual qualifications and essential functions of these jobs are, they are quite objective. For instance, can she rank investments and partners, initiate and prepare formal reports? Is she proficient in spreadsheet modeling? Does she have the ability to understand income statements? These are things that are written down, that are tangible, that are objective under the law. Strong oral and written communication skills. I guess we could all agree or disagree on whether somebody does or doesn't have strong oral and written communication, which seems to be the problem here, right? Well, her oral communication skills. That is part of it, but what it cascades to, Your Honor, is that she doesn't then develop the other skills that are objective within those essential functions and qualifications. Because she hasn't shown, for instance, in being vocal, that she has the ability to understand income statements and cash flow statements. She hasn't demonstrated that she can do things that are objective. And even if they are subjective, that doesn't mean that the court should necessarily infer discrimination. It's just saying that the court can infer discrimination. Can infer and actually should be cautious about granting summary judgment or about finding that they're not qualified at the prima facie stage, right? At the prima facie stage, that is the law. However, under the Hickman case of this circuit, which we cited in our brief, it talks about how whether or not subjective criteria is considered really goes to something that is academic at the end, because we submit there was no evidence of pretext in the record either. So under a de novo review, we'd still get the same result. So briefly, I would like to go through, because I think some of these things are legally and factually blurred, a couple of the claims that are not on appeal, which sounds a little bit unusual, but I think it will help clear the brush here. Let me back up one second. So you have an independent ground of affirmation saying that she failed to show pretext. You raised that with the district court, but the district court did not rule on that issue. Is that correct? Yes. The district court ruled on the prima facie element. So it didn't get to the pretext issue. Correct. But you raised, you raised, you went beyond the prima facie case in your motion for summary judgment. Is that correct? Yes. You had a legitimate reason for denying whatever she was denied, and she had failed to show pretext. Is that correct? I want to make sure that it's properly before us. I understand, Your Honor. Yes. And so if you look, for instance, from paragraphs 48. I'm not interested in the merits of that argument. I'm interested in the preservation of that argument below. Okay. Yes. And you're saying, okay. Yes. She is not qualified under what we've listed more robustly in paragraphs 48 to 55 of our motion for summary judgment. So she has not appealed dismissal of the gender discrimination claims outside of the time period December 3, 2010, to September 29, 2011. She has not appealed any race discrimination claims. She has not appealed dismissal of the 1981 discrimination claim. She has not appealed dismissal of the FMLA retaliation claim. She has not appealed the jury's verdict on the EPA discrimination claim. And then, importantly, the brief, the opening brief is silent as to the individual's defendants within the appeal of the 1983 claim. And kind of confusingly, it refers to PARA's discriminatory acts. But, of course, PARA is an instrumentality of the State, which is immune. And when you look back at the amended complaint and the way that all of the 1983 claims are pleaded, of course, therefore, they're only pleaded against Setter and Moore. In the 1983 claim, she does, she is focused on race, right? She is focused, the 1981 race retaliation is one that she's appealed. And the second one that is on appeal is the First Amendment retaliation, which I believe relates to gender and race. Okay. Okay. So we submit. Let me, on the 1981 claim, she, the complaint that she made was national origin. Are they, do they equate, is race, are they the same for purposes of 1981 national origin and race? It is, 1981 is based on race. Well, yeah. And contracts. And her claim seems to be national origin. And so my question is, are they sufficiently similar that it matters not? I think so, Your Honor. So within the opening brief at 48 and 50, when she discusses these 1983 claims, she does not discuss any culpability or assign any culpability to the individual defendants. So we submit that the 1983 claims against the individual defendants are actually not technically on appeal and have not been raised in this argument. And finally, the opening brief is silent as to dismissal of the 1983 claims in their official capacities. So with my remaining time, I'd like to very briefly go through the highlights of the claims that were appealed. On the Title VII disparate treatment claim, which is only, of course, for gender and for this limited 300-day window, she tries to do three things to overcome the fact that she cannot show an adverse action. None of these are successful. First, an attempt to – because she has no discrete act of discrimination within this window, she tries to argue there is some kind of continuing violation doctrine that applies here. We know that's wrong. We know that the Morgan case does not apply. The continuing violation doctrine does not apply to what was brought here, which is a Title VII disparate treatment claim. What about the argument that at all times she was being underpaid because of her gender? Can't she sue? Doesn't she have a claim that during that time she was not paid enough because of her gender? Two things. One, she did not raise disparate pay as a basis for a Title VII discrete act in her response to the motion for summary judgment. So I submit that is not before the Court. But she would have a strict liability. EPA is much easier to prove, and that's the one the jury found for PARA on. She would have an EPA discrimination claim. But for a Title VII claim, especially if it's not raised below, what she's complaining about with discrete acts have to be administratively exhausted or the Court would lack jurisdiction under Morgan. And each pay period, you have a new discrete claim, correct? Yes. And again, that was not preserved. When you say administratively exhausted, I was interested in that because there's no reference in the briefs to what she raised in her claim to the EEOC. Are you saying that she did not make a pay claim in her EEOC complaint? So the EEOC, of course, not processing equal pay act claims, would not have a jurisdiction over processing that. However, and this goes to the second question. Well, it wouldn't have jurisdiction over it even if it was framed as a Title VII claim? It would. And it was not investigated. That's because it was not raised when you look at Exhibit 1 with term and a complaint that charge. But you never argued failure to exhaust in your brief here, did you? What we argued was the district court was appropriately, they, on Title VII, they did not raise anything outside the 300-day window. And they specifically didn't raise a claim under Title VII that she was discriminated against with respect to pay during that period. Correct. Is that correct? Correct. That's your point. So what she does in her disparate treatment Title VII claim is she argues this pattern of workplace neglect. And that does not rise to the level of an adverse employment action. Because she's not even saying that she was denied all opportunities. When you look at what she's saying, she's saying she liked other people's opportunities better. That she didn't speak up as much as other people. But that's not an adverse employment action. That's at most a mere inconvenience that's held not to be an adverse employment action under Title VII. Now, third, we just addressed, she tried to say for the first time on appeal that she was underpaid and that that was Title VII discrimination. On to the failure to promote claim portion of Title VII. Keep in mind, this is also limited to that 300-day period. She did not, in fact, apply for any jobs within this window. There was no portfolio manager position opening for which she could apply for within this window. That's why, despite the response that we heard earlier, if you look at, for instance, page 56 of their response brief and the motion for summary judgment, she is arguing a continuing failure to promote, not a distinct failure to promote that she's even saying was exhausted. Well, isn't that the way it works at that office? After a while, the supervisor would say, I think you're qualified to be a portfolio manager and then promote. It wasn't like they needed five portfolio managers and there's a position open, so now you can be promoted. They had to have a position that was open because they have to have funding that's allocated as a public entity to those positions. So the first position that she's saying she was qualified for in her briefs, underlying qualifications weren't there, was the position that Dave Saunders was promoted to in January of 2012. So we are outside of this 300-day window. Well, did she not raise below the argument that during this period of time she could have been promoted at any time? There are, I mean, it's like in a law firm. At some point, promoted to be a partner. It's not that there's a partnership opening. It's just that now you're, we think you're ready to become a partner. However, partnership votes are traditionally taken in the fall and they're awarded in January. So the position is not filled, the ones that she's saying that she was qualified for, until January of 2012. Is that in the record? That promotions to become an analyst or, excuse me, whatever it is, a portfolio manager are open at specific times during the year? They are open when there is funding. And there's nothing contradicting in the record that the first time a portfolio manager opening was available was in January 2012. And that is what Mr. Saunders took. Thank you. Your time has expired. Ms. Martinez, did I misunderstand your approach on the failure to promote claim under 1983, that it was waived on appeal because it was not presented below that she was denied a promotion in 2011? Did I misunderstand you there? The 1983 claim, Your Honor? Yes. There is not a – The Title VII claim. The Title VII failure to promote. My understanding was that you said that she failed to raise below a failure to promote in 2011, and that is the very premise that she has used on appeal, and therefore it's waived. Did I misunderstand you? No, but to clarify, what she said was that there was a continuing failure to promote, which to me is not the same as preserving that there was a promotion that she asked for in March 2011 that she was qualified for. Thank you. Thank you. Thank you. There's no question that these issues were preserved at the summary judgment stage. The summary judgment briefs are replete with statistical analysis and salary comparisons and promotions as to among the people who got them. However, that is throughout the entire case. It becomes kind of brain-numbing in seeing all of the analyses that were being argued as proof that she's being paid less than similarly situated men. Now, sometimes when she was only – when she was finally promoted to analyst, the men had been then bumped up to portfolio manager and they were still being paid more, but even when she was an analyst, she was getting paid less than they had been when they were an analyst, and this is discrimination. If I give – if I hire a woman as an associate lawyer and pay her $60,000 a year, but all of the men that I hire as associate lawyers I pay $100,000 a year, she would have a good argument that she's being treated less favorably than similarly situated men, even if they have subsequently become partners. That's what happened. In fact, she was even paid less than the salary range tolerated. They have published guidelines as to the minimum and maximum amount in there, and she discovered, not through any help from them, that they were paying her less than the minimum. And they corrected that, right? Well, yes, because an audit came in and said, you can't pay this woman less than the range, so you have to do that. So begrudgingly they did that. They put her right on the bottom of the thing. But that's just one piece of evidence as to her entire experience while she was at PERA, and that is not only preserved, it's preserved in spades. I'm a little skeptical. You may be right, but too many attorneys come here and say something's preserved because they recited the facts in their summary judgment response, and they didn't argue those facts with respect to that specific defense. Are you saying that, yes, all those facts were put out there, I'm just making arguments based on facts that were asserted in the summary judgment response, but you, in fact, did not put it in the argument section responding to specific defenses? I think a fair, just reading of the summary judgment pleadings and the complaint itself indicates that these were our primary arguments. I mean, the brief 65 pages long, we didn't miss it. It's definitely the whole point. And I know I'm out of time, but there's one point I want to make. We didn't accidentally or casually attach the EEOC charge to the complaint. We specifically did. It was well written. It's five pages of single space, and it's incorporated in the complaint. And throughout that, there are allegations of disparate pay itself. Even if you set aside promotion, that's a different additional way she was discriminated against. Disparate pay is throughout that, and it was argued up until this very minute. Thank you very much. When you're talking about page limits, it just reminded me of something that was a little annoying in the briefing, because in order to meet the page limits, it appears you dropped out the summary of argument section of your brief, which is listed in the table of contents, but doesn't appear anywhere in the brief. And also, there's no discussion of standard of review in any of the issues throughout the brief, which I'm just going to caution in the future that you have to meet the page limits while including all of the required elements of a brief. All right. I did not remember that, Your Honor, but I apologize for that. Thank you. Counselor, excused. Case is submitted. We'll turn to our next case. Oh, sorry.